1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   VANESSA FAY SIQUEIROS,                    Case No.   1:23-cv-00636-SKO

12                 Plaintiff,

13        v.                                   **ORDER ON PLAINTIFF'S SOCIAL
                                               SECURITY COMPLAINT**
14   MARTIN O'MALLEY,
     COMMISSIONER OF SOCIAL
15   SECURITY,[1]                              (Doc. 1)

16                 Defendant.

17

18                            **I.      INTRODUCTION**

19        Plaintiff Vanessa Siqueiros ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application

21   for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  (Doc.

22   1).  The matter is currently before the Court on the parties' briefs, which were submitted, without

23   oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

24

25

26   _____
     [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration.  *See*
27   https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42
     U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office
28   of the Commissioner shall, in [their] official capacity, be the proper defendant.").
     [2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 10).

## II.       BACKGROUND

Plaintiff was born on January 5, 1975.  (Administrative Record ("AR") 325).  She filed a claim for DIB on January 24, 2020, alleging a disability onset date of June 1, 2010.  (AR 296).  In her application, she alleged disability based on her "chronic fatigue syndrome, fibromyalgia, lupus, anxiety disorder, panic disorder, major depression and heart issues."  (AR 329).  Plaintiff has a 12th-grade education and previous work experience as a patient care assistant.  (AR 330).

**A.       Relevant Evidence of Record**[3]

**1.       Medical Evidence**

Much of Plaintiff's application focuses on her chronic pain and fatigue. Plaintiff first sought treatment for chronic knee pain in November 2015, which she reported began more than 10 years before but had worsened over the previous six to eight months.  (AR 409).  Upon examination, the treating physician found Plaintiff had moderate medial and lateral joint line tenderness, and her strength was "very deficient bilaterally."  (AR 411).  The treating physician referred her for physical therapy, and she received a pain injection in both knees.  (AR 412).  Plaintiff was prescribed Tramadol (an opioid) and Baclofen for pain management.  (AR 405).

Plaintiff underwent an MRI in January 2016 which showed moderate disc degeneration at C5-6, disc protrusion at the C6 to C7 level with a partial annular fissure, mild central stenosis, and mild to moderate bilateral neural foraminal stenosis.  (AR 401, 403).  In March 2016, Plaintiff sought care for a severe flare-up of neck and bilateral arm pain.  (AR 399).  The treating physician noted mild difficulty with her fine motor skills and some difficulty with balance and handwriting.  (AR 399).  The provider referred her for epidural steroid injections as well as myofascial injections.  (AR 401).  The provider also referred her to a neurologist.  (AR 401).  At some point, a provider diagnosed Plaintiff with fibromyalgia, though it is unclear when this occurred.  (*See* AR 641, listing fibromyalgia as a diagnosis).

During an October 2016 examination, Plaintiff exhibited decreased sensation in her left arm and a positive sign for Spurling's.  (AR 394).  Plaintiff received trigger point injections for her

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

chronic joint pain in 2019.  (AR 856, 860).  In October 2020, Plaintiff reported an unsteady balance and gait, and these concerns prompted her provider to refer her to a neurologist.  (AR 605).  Plaintiff scheduled an appointment after receiving the referral, but the neurologist abruptly canceled the appointment after Plaintiff had waited nearly a year to be seen.  (AR 746).

Treatment records from 2020-21 vary in their description of Plaintiff's joint pain.  In December 2020, her left and right shoulders showed positive impingement signs, and she reported cervical, thoracic and lumbar pain, and her cervical spine had a restricted range of motion.  (AR 645).  A May 2021 visit summary shows Plaintiff complained of severe pain and nightly swelling in her knees, and an exam showed marked tenderness in "all aspects of both knees."  (AR 766).  In February 2021, Plaintiff reported pain in her left wrist and hand, and an exam showed pain in the central wrist with dorsiflexion and significant tenderness of the left 5th metacarpal on palpation. (AR 791).  Doctors repeatedly Plaintiff narcotic pain medication throughout her treatment.  (*See, e.g.*, 596, 625, 783).  However, other reports showed no evidence of joint pain, tenderness or deformity upon examination, and Plaintiff regularly displayed a normal build and tone with an intact range of motion on all major joints.  (*See* AR 797 [January 2021]; AR 772-73 [April 2021]; AR 756 [June 2021]; AR 751 [July 2021]; AR 746 [August 2021]).

Plaintiff also reported irritable bowel syndrome and urinary incontinence issues.  (AR 45, 696)).    A July 2020 urodynamic study showed severe stress urinary incontinence and a limited bladder capacity (AR 696), and tests from October 2020 showed Plaintiff has positive interstitial cystitis (AR 696).  Plaintiff underwent an operation in July 2020 for retropubic urethral suspension and placement of a suprapubic tube catheter (Tr. 696), and she had the catheter removed in August 2021 (AR 700).

### 2.    Opinion Evidence

In August 2020, Plaintiff underwent an evaluation from Steven Stoltz, M.D.  (AR 575).  Dr. Stoltz noted her motor strength was 5/5 in all extremities with "good tone bilaterally with good active range of motion.  Sensation was grossly intact throughout."  (AR 579).  In his medical source statement, Dr. Stoltz wrote, "Claimant had decreased grip strength with formal testing today in the office though I believe effort was quite diminished.  I do feel she could do occasional pushing,

pulling, overhead reaching, gripping and grasping bilaterally but not on a frequent or continuous basis." (AR 580). Dr. Stoltz also noted that Plaintiff walked without any assistive devices though she had a very stiff gait. (AR 579). Dr. Stoltz ultimately concluded Plaintiff could stand and walk for four out of eight hours per workday with no restrictions to her sitting capacity. (AR 580). He also limited her to lifting and carrying 20 pounds occasionally, as well as posturing occasionally. (AR 580).

Dr. Michael Weilert, M.D., issued an opinion on Plaintiff's physical limitations in September 2021. (AR 910). In the questionnaire, Dr. Weilert answered "yes" to the question, "Do you feel the medical problems for which you have treated the claimant preclude her from performing any full-time work at any exertion level, including sit[ting] down?" Dr. Weilert opined Plaintiff could sit for 20 minutes at a time and for a total of one hour per workday. (AR 910). Dr. Weilert also found Plaintiff could stand or walk for 15 to 20 minutes at a time for a total of one hour per workday. (AR 910).

### 3.    Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified that she lives with and cares for her two children. (AR 40). She testified she has "constant" pain in her arms, hands, neck, hips and back, and her various treatments offer no reprieve from her pain, even with epidural steroid injections. (AR 45, 49). She testified she can walk for only 15 minutes at a time and sit in a standard desk chair for approximately 20 minutes. (AR 49). She lays down and elevates her feet three or four times a day for an hour each, and she uses a heating pad on her mid-upper back to relieve her back pain. (AR 51, 52). She estimated she could use her upper extremities for things like grasping for less than one-third of the day. (AR 52-53). She reported she could lift only five pounds because of pain in her neck and upper back. (AR 50).

### B.    The ALJ's Decision

The Commissioner denied Plaintiff's application for benefits initially on September 8, 2020, and again upon reconsideration on January 6, 2021. (AR 13). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on October 7, 2021. (AR 13). Plaintiff was represented by counsel. (AR 13). Luisa Suess, an

4

impartial vocational expert, also appeared and testified at the hearing.  (AR 13).  In a decision dated February 2, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 51-62).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2010 (step one).  (AR 16).  At step two, the ALJ found that Plaintiff suffers from the following severe impairments: fibromyalgia; cervical degenerative disc disease; obesity; chronic pain syndrome; and chronic fatigue syndrome (20 CFR 404.1520(c) and 416.920(c)). (AR 16). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 19).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff was limited to sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) was subject to the following limitations:

> the claimant can lift and carry, push and pull 10 pounds occasionally and 5 pounds frequently; can stand and walk for 2 hours of an 8-hour workday; can sit for 6 hours of an 8-hour workday; can occasionally stoop, climb ramps and stairs, balance, kneel, crawl and crouch, and can never climb ladders, ropes, and scaffolds.  She must never be exposed to unprotected heights or dangerous, unprotected machinery.

(AR 20).

At steps four and five, the ALJ found that Plaintiff was unable to perform any past relevant work (AR 24), and the transferability of job skills was not relevant because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not Plaintiff has transferable

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

job skills.  (AR 25).  The ALJ concluded that considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (AR 24).   The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: Final Assembler (Dictionary of Occupational Titles ("DOT") 713.687-018); Charge Account Clerk (DOT 205.367-014); and Order Clerk (DOT 209.567-014).  (AR 26).  The ALJ concluded Plaintiff was not disabled under the Social Security Act.  (AR 26-27).

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 23, 2023.  (AR 1-3).  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If

so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one

rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ failed to provide specific, clear, and convincing reasons for discounting her allegations of pain and physical dysfunction; (2) the ALJ failed to properly evaluate two medical source opinions, and (3) the ALJ failed to properly evaluate the limiting effects of Plaintiff's interstitial cystitis and associated urinary dysfunction.  The Court concludes the ALJ did not err in any of these respects.

**A.    The ALJ Offered Sufficient Reasons to Discount Plaintiff's Subjective Complaints**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show their impairment "could reasonably be expected

to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5]  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the most a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In formulating the RFC, the ALJ must account for all the claimant's medically determinable

---

[5] The Court rejects the Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 14 at 13).

impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs when they provide an incomplete RFC ignoring "significant and probative evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.946.   The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)).  The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**2.** **Analysis**

Because the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," (AR 21) the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Plaintiff contends the ALJ failed to state clear and convincing reasons to discount Plaintiff's subjective complaint. These arguments are unavailing.

The ALJ noted Plaintiff's complaints were inconsistent with the medical records, and "[w]hile a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." *Woods v. Comm'r of Soc. Sec. (Woods I)*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (emphasis in original).  The ALJ largely relied on that "the claimant's primary

care, rheumatology, and pain management records also show essentially the same findings: she has some tenderness and mildly limited range of motion, but no motor or sensory loss." (AR 23). For instance, in October 2016, Plaintiff reported decreased sensation in her left arm but otherwise had all her strength in her extremities. (AR 21). Dr. Stoltz noted in his examination that despite reports of chronic pain and fatigue, Plaintiff had no focal deficits, her range of motion was normal, and her strength was normal. (AR 22). The ALJ also noted that examination findings throughout the record showed Plaintiff had no tenderness, joint pain or deformity, as well as a full range of motion in all major joints. (AR 23).

Plaintiff received conservative treatment (as the ALJ noted), which alone could lead the ALJ to discount her testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted). Plaintiff also never sought emergency treatment and she did not follow-up on her referral for a consultation with a neurologist. (AR 23). Plaintiff contends she made a good-faith effort to schedule another consultation after her September 2021 neurology appointment was abruptly canceled, but the record indicates doctors first suggested she consult with a neurologist in 2016. (AR 401).

Plaintiff's other arguments largely suggest the ALJ should have come to a different conclusion when evaluating the evidence, but "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). While the "clear and convincing reasons" standard is among the highest in social security standards, "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ's reasoning is easily discernible, and he cited specific evidence that supported his conclusion to reject Plaintiff's subjective complaints. The ALJ did not err by discounting Plaintiff's testimony.

**B.     The ALJ Properly Considered the Relevant Medical Opinions**

**1.     Legal Standard**

Plaintiff's claims for DIB and SSI are governed by the agency's "new" regulations

concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 20 C.F.R. § 404.1520c, 416.920c.   The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. §§ 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2).   And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. §§ 20 C.F.R. § 404.1520c(a)–(b); 416.920c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  *See also id*. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  *See also id*. § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with

the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

> As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792.  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)).  *See also id*. § 416.920c(b)(3).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*.  Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c.  *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

### 2.    Dr. Stoltz's Opinion

Plaintiff contends the ALJ failed to properly credit Dr. Stoltz's opinion that Plaintiff could do "occasional pushing, pulling, overhead reaching, gripping and grasping bilaterally but not on a frequent or continuous basis."  (AR 580).  The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Stoltz's opinion.

With regard to supportability, it is unclear how Dr. Stoltz came to his conclusion that Plaintiff had some limitations related to pushing, pulling, reaching, gripping or grasping.  Dr. Stoltz evaluated Plaintiff one time, and he noted she was a heathy female in no distress.  (AR 577).  While she presented with a knee brace, she transferred easily to the examination table and did not require a cane, walker or other assistive devices.  (AR 577).  Dr. Stoltz also noted that Plaintiff had a stiff gait but walked without an assistive device.  (AR 579).  Upon examination, he reported she had decreased flexion in her back (AR 578), but she also was within a normal range

of motion in her shoulders, elbows, wrists, hips, knees and ankles.  (AR 579).  He found her

motor strength was 5/5 in all extremities with good tone bilaterally.  (AR 579).  As it related to

manipulative activities, Dr. Stoltz found that while Claimant had decreased grip strength, he

believed her effort during the exam was "quite diminished."  (AR 580).[6]  Dr. Stoltz's perfunctory

report relies entirely on Plaintiff's grip strength test, though he expressed some skepticism about

its veracity based on Plaintiff's "diminished" efforts.  None of Dr. Stoltz's other observations

support his findings, and he does not explain what medical evidence he relied on in reaching his

conclusion.  Therefore, the ALJ properly evaluated the supportability of Dr. Stoltz's opinion."

*Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).

The ALJ also properly found Dr. Stoltz's opinion was inconsistent with the other evidence

in the record.  The ALJ noted that Plaintiff's pain management and primary care treatment

records repeatedly showed she had normal strength, sensation, and range of motion in her hands.

(AR 24, citing AR 686, 745).  Plaintiff attempts to demonstrate Dr. Stoltz's opinion was

consistent with the record by identifying various medical records which "*were not at odds* with

Dr. Stoltz's assessment of manipulative limitations."  (Doc. 12 at 16) (emphasis added).  This is

insufficient, as merely demonstrating that evidence may be interpreted differently does not

establish that the ALJ's finding is not supported by substantial evidence.  *See Andrews v. Shalala*,

53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility,

resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the

ALJ's decision where the evidence is susceptible to more than one rational interpretation.")

(citations omitted); *accord Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir.

2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the

Court] must defer to the ALJ's conclusion.").  The ALJ did not err in assessing Dr. Stoltz's

opinion.

---

[6] There is some disagreement between the parties about what Dr. Stoltz meant when he wrote Plaintiff's effort was "quite diminished."  Plaintiff suggests her hand and wrist pain *caused* her diminished efforts, and Plaintiff notes Dr. Stoltz did not explicitly state that he believed she was feigning symptoms.  (Doc. 12 at 16-17).  Even if Dr. Stoltz did not speculate as to why Plaintiff gave a "diminished" effort, he appeared to base his opinion on a grip strength test he noted was likely inaccurate.

1          **3.      Dr. Weilert's Opinion**

2          Plaintiff also contends the ALJ improperly assessed Dr. Weilert's opinion.  Dr. Weilert

3   treated Plaintiff throughout the relevant period, and he submitted a questionnaire related to

4   Plaintiff's ability to work.  (AR 910).  Dr. Weilert opined Plaintiff could sit for 20 minutes at a

5   time and for a total of one hour per workday.  (AR 910).  He also found Plaintiff could stand or

6   walk for 15 to 20 minutes at a time for a total of one hour per workday.  (AR 910).  The ALJ

7   found Dr. Weilert's opinion unpersuasive, as "[t]his opinion finds no support in Dr. Weilert's

8   own recent examination findings, which were grossly normal (Exhibit 20F/8-11).  Dr. Weilert's

9   opinion is also inconsistent with the claimant's recent rheumatology and pain management

10  treatment records (Exhibits 18F/3-7 and 22F/18-21)."  (AR 24).

11         The Court concludes that the ALJ properly evaluated the supportability and consistency of

12  Dr. Weilert's opinion.  With regard to supportability, Dr. Weilert offers no medical evidence in

13  his official opinion to support his conclusion, and the ALJ properly discounted Dr. Weilert's

14  opinion as a "check-the-box" form that did not explain the provider's findings.  *Molina v. Astrue*,

15  674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-

16  off reports that do not contain any explanation of the bases of their conclusions.") (*superseded on*

17  *other grounds* by 20 C.F.R. § 416.920(a)).

18         With regard to consistency, the ALJ noted that Dr. Weilert's opinion was not only

19  inconsistent with other medical records, but that it was also inconsistent with his own findings.

20  For instance, as the ALJ noted, Dr. Weilert repeatedly found no evidence of joint pain or

21  tenderness, a full range of motion in all major joints, and normal muscle bulk and tone upon

22  examination.  (AR 594, 606, 614, 624, 640, 665, 751-52, 772-73, 797).  Plaintiff appears to contend

23  the ALJ was impermissibly vague when he stated Dr. Weilert's opinion was "inconsistent with the

24  [Plaintiff's] recent rheumatology and pain management treatment notes." This  contention is also

25  unavailing as the ALJ cited specific records that contradicted Dr. Weilert's findings.  (*See* AR 24,

26  citing Exhibits 18F/3-7 and 22F/18-21).  The ALJ did not err in assessing Dr. Weilert's opinion.

27

28

1
2
3
4

**C.      The ALJ Properly Evaluated the Limiting Effects of Plaintiff's Interstitial Cystitis and Urinary Dysfunction**

**1.      Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"'[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities.'" *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where

"none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153–54). "Nonetheless, '[t]he plaintiff has the burden of establishing the severity of the impairment.'" *Jennings v. Kijakazi*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687).

### 2. Analysis

Plaintiff contends the ALJ erred in concluding Plaintiff's interstitial cystitis and stress urinary incontinence were non-severe impairments. The Court concludes, however, that the ALJ's finding at step two was supported by substantial evidence. In reaching his conclusion at step two, the ALJ noted:

> Next, I have considered the claimant's interstitial cystitis, stress incontinence, and vaginal wall prolapse. These conditions are all treated by the claimant's urologist. In April 2020, a few months after the Title XVI application date, the claimant reported worsening urinary incontinence, 2-3 episodes of nocturia per night, 8-9 voidings per day. However, she denied any dysuria or hematuria and her physical examination was normal. Accordingly, the claimant was scheduled for a urodynamic evaluation, bladder ultrasound, and cystoscopy (Exhibit 19F/38). These studies revealed the claimant was suffering from a severe urinary tract infection with mild to moderate erythema. Accordingly, the claimant was prescribed a course of antibiotic medication. She appears to have done well over

17

1  |  the following months, but in mid-2021 her interstitial cystitis flared again.
2  |  Consequently, in July 2021 she underwent a retropubic urethral suspension and
   |  catheter placement. One month later she returned to her urologist and she was
3  |  doing fairly well. She denied any symptoms of dysuria, hematuria, urgency, or
   |  urinary tract infection. She was also healing well from her surgery (Exhibit 19F/2).
4  |  There is no other evidence in the record regarding the claimant's interstitial
   |  cystitis, stress incontinence, and vaginal wall prolapse cystocele. Therefore, I find
5  |  that these impairments are non-severe.

6  (AR 17).

7  As the ALJ summarized, there is no meaningful evidence Plaintiff's conditions have a

8  disruptive effect on her functioning, and an impairment is not severe if it has "no more than a

9  minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

10  Cir. 1996) (citing SSR 85-28, 1985 WL 56856, at *3) (internal quotation marks omitted).

11  Plaintiff argues "[s]uch severe incontinence would require additional bathroom breaks and

12  Plaintiff's need to work in close proximity to a bathroom," (Doc. 12 at 15) without offering any

13  evidence to suggest this is in fact what Plaintiff requires.  Plaintiff also contends that while she

14  has successfully recovered from her July 2021 operation, there is no evidence of "*sustained*

15  improvement." (Doc. 12 at 15, emphasis in original).  This contention is also unpersuasive, as

16  there is also no evidence her condition has deteriorated.

17  Plaintiff also contends the ALJ "was still obligated to evaluate whether the condition

18  resulted in limitations that would have prevented Plaintiff from performing substantial gainful activity

19  for a continuous period of more than 12 months prior to the operation." (Doc. 12 at 20).  This, too, is

20  unpersuasive, as claimants carry the burden to prove they are disabled (20 C.F.R. § 404.1512(a))

21  and Plaintiff has not put forth evidence of how her condition would prevent her from performing

22  substantial gainful activity.  *Cindy F. v. Berryhill*, 367 F.Supp.3d 1195, 1207 (D. Oregon Feb. 13,

23  2019) ("A diagnosis alone does not establish the severity of an impairment.") (citing *Key v.*

24  *Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  For these reasons, the ALJ did not err at step

25  two.[7]

26  _____

27  [7] In any event, because the ALJ resolved step two in Plaintiff's favor, she could not have been prejudiced if the ALJ had erred in finding these impairments non-severe. *Buck v. Berryhill*, 869 F.3d 1040, 1046 (9th Cir. 2017). (holding

28  any error in omitting an impairment from the severe impairments identified at step two was harmless when step two was resolved in claimant's favor).

**V.      CONCLUSION AND ORDER**

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Vanessa Siqueiros.

IT IS SO ORDERED.

Dated:   **May 14, 2024**                           /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE